JACK TAR OF ARKANSAS, INC. *v.* JOHNSON.

5-1215                                                    299 S. W. 2d 822

Opinion delivered March 18, 1957.

*A. J. Thompson* and *Wootton, Land & Matthews,* for appellant.

*Bailey, Warren & Bullion,* for appellee.

MINOR W. MILLWEE, Associate Justice. Vance Bryan was preparing to construct the Jack Tar Hotel and Baths at Hot Springs, Arkansas in 1948 when he entered into a contract with appellee, A. W. Johnson, doing business as A. W. Johnson Company, to do the plumbing, heating and air conditioning work upon a cost plus basis. Bryan, a licensed general contractor, supervised the entire project. Although he started the project as an individual, it was later incorporated as Jack Tar of Arkansas, Inc., the appellant here. Under the agreement Bryan was to settle with appellee for all moneys due monthly.

During the course of construction which ran from December, 1948, until February, 1953, appellee performed work amounting to approximately $130,000 and the parties had frequent accountings. Bryan and the appellant corporation secured advances from the Recon-

struction Finance Corporation based upon expenditures which included payments to appellee. Monthly statements were submitted by appellee which were carefully checked by Bryan and adjustments were frequently made at his request. Bryan made the monthly payments promptly for awhile but gradually got behind.

In March or April, 1953, appellee submitted a complete account of the entire transaction consisting of about 75 pages and showing a balance still due him of approximately $12,000 under the contract. The instant suit was brought May 1, 1953, to establish and foreclose a lien for the balance alleged to be due on the account. This appeal is from certain parts of a decree awarding judgment in appellee's favor in the amount of $12,633.45 plus interest on the account.

Appellant first contends the court improperly charged it with the cost of repairs and replacement of certain parts as set out in the account which were alleged to be defective. These charges for repairs and replacements were made in July, August and November, 1952, and amounted to approximately $230.00 after credits were given in the amount of $212.06 for replacement parts furnished by a manufacturer under its warranty of replacement for defective parts. In contending it should not be charged for this work, appellant relies on the general principle that a contractor under a cost plus agreement is not entitled to charge for the cost of doing work over which was improperly done initially, as set out in 9 Am. Jur., Building and Construction Contracts, Sec. 20. But the chancellor evidently concluded that a major portion of the repairs in question were necessitated either by Bryan's own negligence or that of the electrical contractor in failing to hook up an electrical oil safety switch and not because the work was improperly done by appellee initially. It is undisputed that appellee was in no manner responsible for the electrical work which was done by an electrical contractor. Appellee testified that he explained the importance of hooking up the switch to said contractor and furnished him a guide on how it should be done; and that the lat-

ter's failure to hook up the switch resulted in the burning up of the installation. It does appear, however, that appellee failed to properly credit appellant with $60.34 of the replacement amount allowed by the manufacturer for another installation.

Appellant also contends it was never given credit for a payment of $7,191.39 which it made on the account by its check dated January 17, 1949. In this connection the account showed items charged by appellee on December 31, 1948, in the total amount of $3,821.71 and a credit to appellant in the same amount on January 18, 1949. According to appellee the check for $7,191.39 covered the charge of $3,821.71 and $3,374.98 worth of soil pipe paid for at that time. On cross-examination appellee explained the fact that the soil pipe purchase was not entered on the books in this manner: ''Q. Then the first payment that was due was $3,821.71, is that right? A. That was on this particular account. He (Bryan) paid cash, I believe, at that same time for a truck-load of soil pipe that had been delivered during the month and he was anxious to get the receipted bills to submit to the government, and he paid for the soil pipe at the same time and my bookkeeper handled it as a cash item because it had never been posted to the books. Q. Was this part of the contract? A. Yes, sir. Q. Do you remember the amount of that particular order? A. No, sir, but I have a copy of the invoice. Q. You say that was paid for in cash? A. No, I said we handled it as a cash item. Q. In other words, you never entered it on the books as part of this contract? A. No, it was counted as a cash sale. Q. What was the reason for that? A. The deal was that he would pay at the end of the month for material during the month, he paid for this practically on the day it was delivered and it was not necessary to carry it as a balance forward because he had paid for it. Q. Wouldn't you show it as a credit on the account? A. Some people might, but I wouldn't. That's the way usually; when we sell anything ordinarily, if it's handled as a cash sale to cut down on bookkeeping expense. Q. Then that particular truck load of material does not appear on this account anywhere?

A. No, sir. Q. Would that item run several thousand dollars? A. Oh, about three thousand dollars, I don't remember exactly."

On redirect examination appellee further testified: "Q. Mr. Bryan has referred to a cancelled check that he made payable to your company in the amount of $7,-191.39, that he states is not indicated on your exhibit No. 1 or your account of the job, how do you explain that? A. He was given credit for $3,821.71 for a part of that check, the rest of it was for a truck load of soil pipe that was delivered January 10, paid for on January the 18th, and we handled it as a cash item as though somebody had come in and bought a truck load of pipe, gave us a check; in other words, we didn't charge it through accounts receivable. Q. Did you deliver $3,-374.98 soil pipe to this job? Is it reflected anywhere in here? A. No, it was not charged, and therefore there's no credit. Q. Was $3,816.41 charged to this job for December '48? A. They made a $5.30 error, they charged it $3,821.71. Q. What do these two items total? A. $7,191.39. Q. Is that the exact. amount of the check given you? A. Yes."

Although Bryan appeared to have in his possession at the trial all the appellant's checks and the various vouchers issued in connection with the project, he offered no tangible evidence in contradiction of appellee's explanation of the transaction involving the check for $7,191.39. He would not deny delivery of the soil pipe as indicated by appellee. If the credit of $3,821.71 had been paid by a separate check for that amount, or in some manner other than as indicated by appellee, it should have been a simple matter for Bryan to have made such proof. The chancellor also probably considered it significant that Bryan continually accepted monthly statements for over four years and without any indication that proper credit had not been given for the $7,191.39 payment until June 18, 1954, the day of trial.

The factual issues presented were determined by the chancellor on testimony that is to some extent con-

flicting. Except for the item of $60.34 previously mentioned, we are unable to say his findings are against a preponderance of the evidence. The decree is accordingly modified by reducing the judgment in appellee's favor to $12,573.11 plus interest. With this slight modification, the decree is affirmed.